Thank you, your honor. If the court please. My name is Bill Walker and I'm the attorney for Dan Millis. And as per the court's instructions in its sheet, I know that you've all read the briefs, so I'll dispense with reciting the facts unless the court indicates otherwise. This is a one issue appeal. It's a very simple issue. And that is, did Dan Millis, the defendant, violate 50 CFR section 2794A? Did the government provide evidence that he in fact violated that statute? Now, as the court knows, in a criminal case, we follow the law of lenity. And that is that in this case, the statute is to be strictly construed. And here's what the statute says. Did he litter, dispose, or dump garbage, refuse, sewage, sludge, earth, rocks, or other debris? That's it. There's no room for movement from that CFR. In this case, as the court knows, the evidence was clear and undisputed. The defendant acknowledged his acts. He acknowledged what he did. And that was he put out sealed bottles of pure, clean water for migrants in distress. The question is, does that constitute littering? And we do not believe that it does. Now, if you read the record, it's clear when I cross-examined the officer that the officer acknowledged that he could have been charged with other violations. He could have been charged with putting out water without a permit. He could have been charged with all sorts of other things. But the question is, did he litter? And there are two Supreme Court cases that are very important on this issue. The first one is the Schneider case. Now, the government says, well, the Schneider case talks about a First Amendment right. And I grant you, it does talk about a First Amendment right. But it also talks about the definition of littering. And what it said is that when a person comes out to a park and gives out brochures to people, that's not littering. It only becomes littering when the person then crumbles it up and throws it away as garbage. But isn't there some difference there if I hand it to you, I have not left it on the park or monument? Your Honor is correct. There's an important difference. But there's also an important similarity. It's true that it was handed to a person in the Schneider case. But let's suppose that a person came on to the wildlife refuge and put out brochures on a stand for people to take. Well, I think if you went on the ground, as the Schneider case would indicate, that clearly would be littering, wouldn't it? No, Your Honor. I think if you went into the wildlife refuge and put a brochure on the ground. Well, that may be different if you put a brochure on the ground. Well, let's say 50 brochures on the ground. If you put a bunch of brochures in a place where people are going to come by and see them and utilize them, that's not littering. Now, it may be a different crime. It may be something else. And it may be, as the officer suggested, he shouldn't have done that without a permit. Let's go back to your comment, because if this comes through in your briefs, you say where the person is going to use it. Does it matter what the subjective intent is of the person who places it there or the downstream use of the object? I don't think it depends on the subjective intent of the person that puts it there. But I do believe that it depends on what it is that you place there. And let me give you this hypothetical. Let's suppose a person leaves a car there. Is that litter? Well, according to the government's argument, anything that you leave. Well, if the car was abandoned, right? If the car is abandoned for substantial period. That would be different than if you left your car there for two hours to go hiking. I agree with Your Honor. But if you look at the record in this case, the record in this case indicates two things. Number one, these people came back and picked up their trash. So if there was trash. And so they pick up other trash when they're there. So there's not an intent to abandon. Secondly, in this case, paradoxically, if Your Honors will look at the supplemental record that I gave you, the supplemental record says very clearly that the government looked on a number of trails, the trails in which water was put out on that day. This is on page the supplemental record, page three. And the government acknowledged they found no empty bottles whatsoever or trash bottles whatsoever. All they found were full bottles. And interestingly enough, I mean, this is the gotcha that the law sometimes has in cases like this. When they went out there to pick up trash, the officer told them that they couldn't pick up trash because that was a violation too, to pick up trash. Now what kind of sense does that make? What if you had left clothing, usable clothing, and so instead of water you felt that people would be coming across and at night it's cold down there. So you leave usable clothing in nice little tidy piles. Would that be garbage? I think it would not be garbage or litter if you left them at organized places. It would become litter if Your Honor please. You're using the term organized places. And here they were placed on the ground. The organization was in the mind of the people who left them. It wasn't a depository that was set up by the Forest Service. No, but the record shows that they were left at recognized places on a map. That were places where migrants would come and use the water. And so Judge, I think you have a lot of good common sense arguments here in terms of the blurring of lines. But in this particular case where the law of lenity says you've got to look at the statute, this statute was designed in order to keep people from coming and dumping garbage all over the place. It wasn't designed to keep people from taking bottles of pure clean water and putting them out at places where they knew migrants would be able to take them and use them. They might become litter if a migrant later takes it and uses it and throws it away. But there's no evidence that there were any empty bottles thrown away. In fact, the government conceded at the trial that there were no empty bottles other than some trash that these people had picked up in their truck that were from other things other than these empty bottles. Counsel, how far does your principle extend? Let's suppose that we had hikers in a national park who decided that they wanted to lighten their load and decided to leave all their tuna fish for subsequent hikers. Can they do that without running afoul of the litter laws? I don't know, Judge. And I'll be honest with you. I don't know. I think this, under the law of criminal lenity, is not a crime. And this is not, when they put it out, it is not garbage. It is not refuse. It is not sewage. It is not sludge. It is not earth, rocks, or other debris. But would, in your view, this make them culpable under the abandonment statute, the separate CFR? I think if there was abandonment, that would be one thing. But the facts in this case from the trial were that these people left these bottles for people to pick up and use. They went back. They pick up whatever might be refuse later. The specific supplemental record that I give you has the agent saying specifically, we did not find any refuse from these people. We did not find any empty bottles. And I think that answers the question. It's one thing. You have a little under two minutes left. Do you want to say something? I would like to save my rest for rebuttal. Thank you, Your Honor. Thank you, counsel. We'll hear from the government. May it please the Court. I'm Ann Demarais. I'm from the District of Arizona, and I represent the United States in this case. As the defense counsel talked about, he doesn't dispute that he put out plastic jugs in a National Wildlife Refuge. He's not disputing that there's sufficient evidence to support the citation. His only argument is that he could not be cited as a matter of law because there is he attaches a value to these plastic jugs. The old adage, one person's treasure is another person's trash. Exactly. Exactly, Your Honor. And in today's, with recycling, anything could be the value. I mean, so is everything garbage? Is that suit you're wearing, is that garbage? If I took this off and threw it on a National Wildlife Refuge, absolutely, Your Honor. It would be garbage. It would be. And what is the definition of garbage? Your Honor, the – well, let's say even – there is no definition of garbage. But I think – Well, what do we look for? So anything is garbage? Is this building garbage? I think it's – Well, let me just ask you, is this building garbage? It's sitting here. If you could pick it up and move it, would it be garbage? I guess if you broke it up in pieces and threw it on a National Wildlife Refuge, Your Honor, it would be garbage. And then he made a new definition about breaking it up in pieces. In his view, he didn't break it up. He left the water in the jug. So one of our issues in these criminal cases, of course, is to interpret the language. So you're saying there's no definition of garbage. Is that the government's position? Your Honor, I – the district court looked at this in her – in her detailed order. And it's not only the item that you look at. It's how it's disposed of, how it's displaced, where it's disposed of. I suppose. But, you know, there's a – I guess there's a common-sense view of this. And the regulation could have been dropped to say if you leave any object on the – in the refuge. But it says garbage. And I think most of us think of garbage as something other than a jug of pure water left for migrants coming through. Well, the regulation says, you know, more than that, it's debris, litter, garbage. Right. This isn't debris. I mean, it goes on to say refuge. It's a fairly specific definition. I mean, what struck me when I looked at that was, well, there's another provision in the regulations that fits this, which requires that you get a special permit to put water out. And they didn't do that. They probably violated that section, but they weren't charged with it. If there's a specific section that addresses this issue and you have a more general section, why wouldn't a more specific control as a matter of statutory interpretation? The – because, Your Honor, we're talking about a plastic jug here. And even the defendant talks about – and it's in the – it's in the record in the – and I added it as an exhibit. Their own – in the SCR, it talks about, you know, pick up prior refuge from prior drops. They even recognize that plastic jugs are trash. It's refuge. They recognize that fact, and it's stated in there, pick up drop – pick up refuge from prior drops. And so they recognize that it's – they recognize it. Well, it had become litter at that point. But when they drop it off, it may or may not be. I think Judge Bivey had a question. The record shows that the Forest Service has permitted another group to place large barrels of water for migrants coming overland. And they have – apparently have a permit to do that. Now, if they did not have that permit, would those barrels be garbage under this definition? Yes, Your Honor, because they would be barrels of water that were left without permission. I think you – one needs to look at the purpose of the National Wildlife Refuge. It's not – it's not a national park where hikers are leaving town to tuna, as Your Honor mentioned. It's not for people. It's wildlife. Their primary purpose is to protect the wildlife – the plants, animals, birds, fish. And southern Arizona, it's a very delicate balance dealing with trying to preserve these endangered species with all the migrant traffic. So anything that's left behind – the defendant relies on a value system. Well, if you're going to rely on a value system, I suppose you look at the value that has the refuge and its purpose of the refuge. And those water jugs have no value. Well, but you see, that's where you say anything left behind. And if the statute said that, the littering, disposing or dumping of any object is in violation. That – we wouldn't be here, of course, because that would be easy. Unfortunately, they didn't write it that way. So one of the things is you have to give some meaning to garbage. And when you go to the dictionary definitions, they talk about garbage meaning food waste or useless material. And then I have to stop and query whether water in a jug falls in that definition. What is your response to going the dictionary definition route, which we're asked to do on many occasions? Well, I think the district court looked at first at the plain language of the statute, Your Honor. And it does become difficult because anything can be of value and anything can be of garbage. I mean, any – I suppose if you go buy a bag of potato chips in the store, it has value. If you throw it on the ground and leave it there, it becomes garbage. And by a defense argument, it's a value-based argument. And the court went into this. You could leave food, clothing, bottles of insulin, six packs of Coke. There would be no end to this. They could leave whatever they want on the refuge and say, well, it has value, to somebody who maybe happened to buy it.    It's a good issue. If it's— If what you have charged them under the abandonment statute is legally Border 跟大家, I'm sorry, but what is the abandonment statute under which you have charged them? You have charged them under the abandonment statute for CFR. It's a legal question. It's not a record question. It's a legal question I'm asking you. As a prosecutor, do you think you in good faith could bring a charge under these circumstances under the abandonment provisions? I think that a plastic jug more clearly falls in the littering. Yes. You know, you're not answering the question. It doesn't make sense. You know, I'm sorry. Off the top of my head, I don't remember the exact question. But I know it's right above. I know it's right above. The section is right above. And so I just offhand can't remember the exact question. So I suppose that arguments could be made for abandonment of property. I'm thinking that was more geared towards things like tents, you know, people— Or leaving materials without a special use permit, right? That's another section. That is another section. The record shows that there are apparently a number of trails. Are these hiking trails through there? They're not hiking trails. They're not hiking trails. They're illegal immigrant trails. So they're non-authorized trails. So there are no trails that the Forest Service is maintaining or has carved? Are there signs directing you? I mean, is there any recreational use of this refuge? There is, Your Honor. And they do have certain hiking trails. Do they allow camping? They do allow camping. They allow hunting. They allow bird watching. Okay. And do they have designated garbage or refuge pickup places? No, Your Honor. There's no dumpster, no trash cans, even in the places where camping is permitted? Is it a zero impact regulation? You have to pack out, Your Honor. So you have to pack out everything that you pack in. And like I said, enough makes a difference. So what if I bring my Girl Scout troop in there, and I'm going to spend the night. But we want to make sure that the girls have water along the way at appropriate places. So I go a little early, and I place these jugs. And we're going to be there a couple of days. And that way, the girls can hike and drink. And then they'll pick up the garbage as they go, you know, pack in, pack out. Would I be in violation of the statute? Yes, Your Honor. You cannot leave water, plastic water jugs on the refuge. For even a second. Well, I don't know if we're talking about seconds. How about an hour? I think reasonableness, an hour, reasonableness always goes into whether you're cited. But where does that say that in the statute? I mean, in other words, how would I know? That would be the other question on the role of lenity. So I'm the Girl Scout leader, and the girls are really slow, so they take six hours to get to this place. So I had to leave those jugs for six hours. Would I be on fair notice that I would be littering in the wildlife refuge? I believe so, Your Honor, because they talk about you cannot leave stuff behind at a national wildlife refuge. And the problem is, what if you come back a different trail? What if somebody gets sick? What if you don't get back? You cannot leave plastic jugs on a wildlife refuge. It's pack in, pack out. And these plastic jugs. Well, that's what my girls are going to do. They're going to pack it out as soon as they drink it. If they don't abandon it at some point. And I think, Your Honor, I mean, as far as citing these people, this is a very fair situation. I mean, they didn't say you left plastic jugs, you're going to get a citation. They said it's littering. The officer said you can't leave plastic jugs out. Pick them up. They refused to pick them up. And, I mean, this is a case where, you know, they were on notice. They were told not to do that. They recognized that it is plastic jug is refuge by their own admission in this case. It's a national wildlife refuge. It's set for animals, plants, the environment. And people come second. It's a secondary use. Thank you. Thank you, counsel. Counsel has materially misstated the record. They did not refuse to pick up the jugs. If you look at the citations that we give you, they were in the process of picking up the jugs. There was a dispute. There was a dispute. And they were picking them up. But here's the important point. Counsel says, quote, well, this becomes very difficult. It does become very difficult. This is a criminal statute. And there are three parts of the record. This is not an issue just of law. This is an issue of whether they established their case at trial. And here is the record. Number one, at ER page 28, the following colloquy takes place. So is it fair to say there were things you could have cited these defendants for, this defendant for, other than what you cited him for? Answer, that's correct. You could have cited him for putting out water without a license or without a special use permit. Answer, well, let me think about that. I mean, really, you could cite anything that's not specifically allowed on a National Wildlife Refuge is prohibited. So I could cite anybody for anything that's not permitted as doing it without a special use permit. That's what they should have charged them with, putting out water without a special use permit. This is not pursuant to the technical law of the statute. And we can sit here all day and say, ho-hum, what about this? What about that? But, judges, with all due respect, this is not littering of garbage, refuse, sewage, sludge, earth, rocks, or other debris. And when she says they were willy-nilly putting out this water, no, they were not willy-nilly putting it out. The record shows they had a map in their truck. The record also shows this, if Your Honor, please. If they put plastic, empty plastic jugs at these precise locations, that would be littering. That would be littering. Because then it would not be, then they would be littered. But this is not litter. It may become litter. But this is what's really important. At Page. It's a litter in a transitionary phase. It's very similar to the brochures, Your Honor, that become litter when somebody wads them up and throws them away. And if a migrant picks up this jug and takes it with him and goes somewhere else and then uses this jug, it never becomes litter, does it? And it's only if the migrant later takes it and throws it away, he's the litterer. And it's as the court says in Turner Broadcasting Systems, Justice O'Connor, if the government wants to avoid littering, it may ban littering. But it may not ban all leafletting. They're two different things. May I say one more thing? You're about a minute over your time. I'm sorry. But I want to thank both the counsel for coming here from Arizona and participating with us today. I'm sorry for the brevity. We have to cut off and move along these arguments. But the case is well briefed and argued. And thank you both.
judges: Thomas, McKeown, Bybee